Our final case this morning is No. 23-1091, Perlick v. DVA. Good morning, may it please the court. When the board denied or rejected Dr. Perlick's request for consequential damages for lost earning capacity based upon her failure to, quote, guarantee future employment beyond an arbitrary date, it misapplied the standard for determining consequential damages. The standard is not a guarantee or a requirement of certainty. It's a preponderance of the evidence standard, which basically requires that a fact be more likely true than not. So if we were to agree with you that there was that misapplication of the standard, are you seeking a vacated remand in light of that, or what relief would you be seeking? Well, we are seeking a vacater and remand, although I do think that the court has the authority based on the record to conclude that consequential damages are appropriate. But what we've requested is a remand so that there can actually be factual findings made with respect to the wealth of evidence presented by Dr. Perlick that she would indeed have continued working beyond the date that was cited, March 31, 2020. It's an arbitrary date for several reasons. First, that's simply the date on which Dr. Perlick – a federal grant that Dr. Perlick was working on was set to expire. Dr. Perlick was an academic researcher at the VA and for a career that spent 20 years routinely worked on term-limited federal grants. In fact, she had worked on a dozen term-limited federal grants prior to the grant. I'm sorry. The statute in the first part says that the individual would be placed as early as possible in the position the individual would have been in had the prohibited personnel practice not occurred. So the ALJ looked at the position she would have been in because she was terminated in 2018? 2017. Her contract was set – her term contract was going to expire in 2019, but the project was going to continue to 2020. And so basically, as I understand it, looked at it and said that would put her back in the position she would have been in to pay her out to the end of the project. But then found that beyond that, it was speculative as to how much longer or what projects she might have gotten and worked on. And so the back pay covers that period that put her where she would – because, I mean, this isn't somebody with an open-ended contract. There was a contract period. Well, but this is where it's important and what the ALJ ignored is the long-established pattern of annual renewals year after year after year. Not just for Dr. Perlich, but that were the facts – those were the facts for her. But across the VA, we've pointed to people who were working on the same projects with her who remained at the VA after Dr. Perlich was terminated and after the March 31st date. So the place that she would have been in is she would have been getting another – progressing to the next federal grant, as she had for 20 years. And she would have been progressing to the next one-year contract renewal. And this is where the unrebutted expert testimony is very important, which was never reckoned with by the ALJ. This is a field, academic research, in which people routinely work deep into their 70s and 80s. It's an intellectual output type of job based on cognitive ability, where someone really starts to hit their stride at age 69, which was Dr. Perlich's age, when the ALJ determined that she would never work again. Not just at the VA, but anywhere. Dr. Perlich testified through her affidavit that she had every intention of continuing to work. And frankly, given her output of articles and book chapters, etc., that's compelling evidence, backed up by an expert with statistical data, that it's highly likely – more likely than not – probable, in fact, that she would have continued working, certainly past this arbitrary date. And she presented evidence also that the termination and the statements that were made about the termination caused her to be unable to secure future employment, right? That's correct, Your Honor. She pointed to a number of factors, which were also endorsed by her expert, that there had been reputational harm resulting from false statements made about the reasons for her termination. She was very specific in her affidavit about some examples of this. One of them was within the VA, when she attempted to move her grant to a different facility on Staten Island after receiving initial interest. She was later told, well, I've found out about the disciplinary basis for your termination, and we can't go forward. There was another specific example she cited outside the VA context. And what the expert testified to is just the very nature for an academic researcher when you're terminated mid-grant. It was described by the expert as a career ending. I'm not sure if we're going to need these labels, but I want to at least level set with you. Are you seeking both to challenge the compensatory damages award and the consequential damages award, or solely one or the other? I just want to make sure I kind of level set. Yes, it's solely the consequential damages for lost earning capacity. And by this we mean what she would have been able to earn past March 31st, 2020, but for the unlawful termination. And we believe she had an affiliation with Mount Sinai Hospital, for example, that was canceled and removed. She was no longer able to continue her research, which had a kick-on effect with her publishing capacity. And certainly someone who experiences a mid-grant termination like this bears a stigma going forward, which impacted her subsequently in job applications. There's less interest, and this is all in the expert testimony, there's less interest in an academic researcher who's been removed from their research. That's their marketability. That's what they're selling. And when you're suddenly terminated mid-grant, in addition to the stigma and the black mark on your record that that means in terms of speculation about why you were terminated, or standard concerns about when people are whistleblowers, there's also the actual loss of your ability to conduct your research and then use that to continue obtaining future federal grants. None of this was addressed by the ALJ. None of it was rebutted either by the VA. And I understand, and you discussed earlier in the case, that the ALJ doesn't have to detail every single basis for its determination. But as this court pretty articulately laid out in Whitmore— What is your best statutory and or legislative history support that she should be entitled to these damages that you just described? Well, first it's make whole relief, and I think reference to the two-pronged corrective action, just starting with the statutory language. The first provision is that the individual be placed as nearly as possible in the position the individual would have been in had the prohibited personnel conduct not occurred. That's independent of prong two, which addresses consequential damages. And the legislative history, dating back to the WPA's origin, but then especially in the 2012 amendments, emphasizes that the entire purpose of the act is to make sure that whistleblowers will come forward and that they won't be penalized for that. And part of it in the amendments added the extra corrective remedy of non-pecuniary damages for emotional distress. But that's consistent with the notion that if you don't provide for future losses of the kind sought by Dr. Perlich, you're basically acting in a fashion that's contrary to the entire legislative purpose of the Whistleblower Protection Act. And particularly the enhancement, which is to make sure that whistleblowers are undeterred and don't refuse to come forward out of a fear for the impact it may have on their career. So, using part one, where it says put you back in a position you most nearly would have been in, so we got her up to 2020. And your argument is that there is plenty of evidence that her employment would have continued in different capacities going forward. I mean, I think the court did find that out to 80 might have been a little speculative, but at least for some period of time. But the unfortunate choice of the word guarantee she would get employed did look like a standard was set that she had to meet some burden that was higher than just reasonable evidence that she would have continued employment and that this termination was getting in the way of her getting that employment. I agree with that, Your Honor. I think the word guarantee is the reason we're here today. Well, aside from the failure to reckon with a lot of the evidence, but that shows that this is a case that goes beyond mere deference to fact-finding. We don't think there was substantial fact-finding, but the use of guarantee essentially sets an unattainable bar for just about any term-limited employee. And that's the policy concern here that goes beyond Dr. Perlich. There is a large category of federal employees who operate under federal grants. They're typically term-limited, and many such federal employees in academia and hospital settings work on one-year renewals. If someone has to guarantee what's going to happen after the expiration of a federal grant, notwithstanding the fact that they may have worked like Dr. Perlich for two decades getting one federal grant after another, it would be virtually impossible for anyone to ever assert the entitlement to lost future damages. How does the Bohack case fit into your analysis that says that consequential damages are limited to actual monetary losses or out-of-pocket costs? Well, Bohack was decided first before the amendments, and it dealt primarily with non-pecuniary emotional distress damages. And I think what's instructive about Bohack – first of all, that's what I don't think Bohack is controlling here. But what's instructive about Bohack is it explicitly stated that if Congress had addressed non-compensatory damages, that might be a rationale to consider a broader scope for remedies. And it talked in the same context about the notion of expectancy damages. So I think Bohack was limited to a prior period in the legislative history of the statute when compensatory damages didn't exist. And it opened the door itself quite literally to the idea that the scope could be remedied by Congress. Congress did so in 2012. Well, I'm not sure that you would need to rely on that because Bohack, I thought, was pretty clear in saying it was dealing with non-pecuniary damages and emotional pain and suffering, which was not allowable under the statute in the 2012 amendment, pretty clearly designed to deal with that particular problem. Bohack allows pecuniary damages. That's right, Your Honor. I agree with that. And for that reason, I don't think Bohack is an impediment to a ruling here that would reverse. Your Honor, I see I still have some time. I can walk through some of the evidence that was ignored. I think first and foremost, the only rationale that supports the decision, as the ALJ stated it, was the assumption that on March 31st, 2020, upon expiration of the grant, she would have been out the door that afternoon. Just looking at her record, what's clear is that when prior grants terminated, number one, she never lost her job. But number two, she maintained her position notwithstanding the absence of a grant through the end of her term. At the very least, there's no explanation for why she wouldn't have worked into July of that year when her contract would have expired. So there's already just a conceptual flaw in the selection of that date. And what it highlights is this belief that's not borne out by the facts, that's directly contradicted by the facts, that when your grant ends, you lose your job. It simply never addressed anywhere in the ALJ's decision why the ALJ made that determination. If the ALJ had not used the guarantee language and had actually analyzed that decision, there might not be a basis to bring a petition for review. I have one last question for just the posture of the case. So non-pecuniary compensatory damages were awarded to cover both her emotional harm and reputational harm, correct? I believe that's correct. So this would be remanded if it was remanded for purposes of looking at future loss earnings and what would be reasonable and foreseeable? That's correct. That's correct. And the reality is that Dr. Perlich continued to apply for jobs. She applied to dozens of jobs, even during the pandemic, through submission of papers on the underlying motion. That was January of 2022. It's outside the record, but I can tell you that she's continuing to seek work. She's very active. She's only 73 years old. And I assume my time has expired. I'll reserve my time. Thank you. We'll give you two minutes for a comment. Mr. Kerr, is that how you pronounce it? Yes, thank you. Good morning. May it please the court. The administrative judge's use of the word guarantee— So just back up a moment. As I read your brief, you seem to be arguing that under the statute you can't get lost future earnings? That can't be right, right? Our argument is that you can't get—for consequential damages, they have to be foreseeable. Sure, but that may be true. But if there's a foreseeable loss of future earnings as a result of the termination and related conduct by the agency, surely under the statute you can recover that. Well, under BOHOC, the damages must be out of pocket. It says that must be pecuniary. And there was a 2012 amendment. I mean, is the government's position really that you can't get lost earnings if you prove that they resulted from the unlawful termination? With the 2012 amendments, Congress added— No, no, no. Just answer the question. Is the government's position that if you prove lost future earnings as a foreseeable result of an unlawful termination, that they're not recoverable under this statute? As consequential damages, yes. But they could be recoverable as compensatory damages because the statute says future pecuniary losses. If you look at strictly consequential damages, this court in BOHOC said that's only out-of-pocket losses. So how could a future— So you agree that under the statute you can recover lost future earnings? Yes, if you recover them as future pecuniary losses, which are compensatory. This court in BOHOC— The one thing that BOHOC is pretty clear about is that the categories here are pretty fluid and not clear, and that the scope of consequential damages is not all that apparent. I agree with you, Your Honor. They are fluid, and maybe I was making too fine of a point. But regardless of whether they're consequential damages, which is the way these have been presented, or future compensatory damages, the result is the same. The use of the word guarantee was to show— Okay, so let's assume that future earnings are recoverable, lost future earnings are recoverable, if you prove the foreseeable result. If you prove foreseeable— And it was undisputed evidence, right? I mean, the government didn't put in any evidence to the contrary that that would have happened to her, right? That she had lost future earnings, unrebutted, correct? It's not unrebutted, Your Honor, because the agency— Not unrebutted? What evidence did you put in? The agency put in comparable employees that were separated after a time-limited appointment, which is the situation we have in this case. The agency's argument— I'm sorry, you put in evidence of what? Comparable contract employees who were separated when their contract expired, when they're not to exceed— Okay, what does that prove? It goes back to entitlement to employment. The agency was arguing there's no— I don't understand what you're talking about when you're saying there was evidence of comparable employees. What is the evidence? That they never got another job after their term appointment expired? There's no guarantee. There's no guarantee. Ah, that's the key, right? No guarantee. That's correct, Your Honor, but that shows that it's speculative. Well, don't you have to look at her personal circumstances? I mean, she, as they pointed out, had a very long track record of running these programs. She was getting great reviews. There were no problems. This whistleblower thing comes up. She gets terminated. At least the record reflects that people were saying things that were getting in the way of her getting any other employment opportunities. If consequential damages covers the potential for future lost earnings, then she doesn't have to guarantee that she had another job. She just has to make a showing that it's reasonable and foreseeable based on her personal employment history that she could have got new employment but for this termination? She has to make a showing that it's foreseeable by preponderance of the evidence. And the administrative judge considered the reputation, considered the reputation allegations, considered the e-mails, and considered the other employees who are time— But by using that word guarantee, doesn't that seem that there was a heightened standard applied than what was actually applicable? No, Your Honor. Respectively, it means that it's speculative. The administrative law judge was saying—the administrative judge, excuse me, was saying that the employment past the time appointed term was speculative because there was no right to it. There was no entitlement to it. Oh, that's exactly right. She says because there was no right, it's speculative. That's not the right standard. Well, I would point to— It didn't necessarily have to be with that. I mean they put in evidence that this action interfered with her ability in the marketplace in general. The administrative judge considered that evidence, considered that she was a time-appointed employee and therefore had no entitlement and that there was—and also the date she chose was not arbitrary. The date she chose was to the project where her not-to-exceed date was in June of 2009. I don't think you're arguing that the back pay was inappropriate. I mean she did it up to the date at the end of the project. She did it up to the date at the end of the project, and that's her future earnings right there from the time— No, she'd already been terminated, and she would have gone to March of 2020, so that's back pay. What happens after the project ends is going to be very dependent in large part on her history, on her performance, on her opportunities, the evidence she can present. Ultimately, the ALJ may come back to the same decision, but it's kind of shadowed by this word guarantee. Well, I would point the court to the concurrence in Oliva where Chief Judge Prost was saying that— Prost. Prost, excuse me—agreed with the decision but wanted to make the point that the lost relocation incentive pay was available but not guaranteed. And then in the very next line, therefore the board's finding that Mr. Oliva failed to prove preponderant evidence that he would have received the incentive even if he hadn't been terminated. That's a concurrence on different facts. It's a concurrence on different facts, but it shows the word guarantee doesn't change the standard. What the administrative judge was looking at was whether it was foreseeable, and she was saying it's not guaranteed, therefore it's speculative. The end of that paragraph says it's speculative and non-conjecture. Because it's not guaranteed, it's speculative. That's wrong. It's not guaranteed means it's past the point of entitlement or right to employment. And, you know, Dr. Perluck in the briefs cites all of these contract cases. This is like saying I want damages for a future contract that I would have gotten. This is past the point of where the statute envisions recovery of back pay. Any at-will employee isn't guaranteed they're going to have their job tomorrow. But if they get fired for being a whistleblower and then they don't get rehired back into their position and then that firing is getting in the way of them getting any other kind of job, if you agree that foreseeable future lost earnings are recoverable as a consequential damage, you don't have to come in and say, oh, yeah, I had a guarantee of a job. It's an analysis based on how reasonable this possibility is that they could get this future, because it's future. I agree that it was available as compensatory damages, but the result is the same. Do you want to at least grapple then with the language in, I'm going to say, subsection I or I, I should say I, I think, about would the individual be placed as nearly as possible in the position the individual would have been in. So let's ignore the labels for the moment and just do you want to respond to that aspect, because I believe that was also an argument that was made by opposing counsel. Well, Dr. Parlock had a time limited appointment. So she was placed in the position that she would have been in absent the. . . And the history of having additional subsequent kind of one year sort of appointments. I feel like you're only accounting for. . . Concluded that that was speculative, that she considered the history of appointments. She considered the evidence of the email that was sent. She considered the other facts that have been mentioned, except for the two employees. I want to point out to the court that the two employees who continued on with the project, that's not in the record below. Dr. Parlock is asking this court to take judicial notice. What evidence did you put in that she would not have continued to work and earn money if she had not been improperly terminated? We put in evidence of a, that it's often the case or has been the case where time limited appointments, when they expire, the term employee is separated, that there's no. . . What happens after that point is speculation. Maybe they'll continue this trend. Did you have an expert saying it was speculative? No, Your Honor. We put in a description of other employees who were time limited appointments who did not continue after their time limited. . . Didn't continue to work at all? Expired. Well, didn't continue with the government. Do you have an appendix page to point us to? Sorry? Do you have an appendix page or something to point us to? Yeah, APPX 1561 and 1562. And the basis of the government's argument below is that the remedy. . . I find it difficult to believe that you're seriously making this argument. If you're a whistleblower and you're told, okay, you'll get back pay for the term that you've been hired. But if it destroys your career and you'll never work again as a result of the improper termination, why would anybody be a whistleblower? Somebody who's 40 years old is going to work for another 30 years, let's say. Why would you blow the whistle if you were told you'll get your pay to the end of the contract, but you'll never work again and you won't be able to recover for that? Your Honor, the facts in this case are that. . . Answer the question. Isn't that directly contrary to the purpose of the statute to say that you can't get future wages? You can get future wages if you can show that they're foreseeable. And a time appointed. . . And so what was missing from her proof? As a time appointed term employee, what happens after the contract is over is speculative. What happens after her not-to-exceed date is reached, is speculative. Did you put on evidence, though, that she had talked to people in the academic field about doing research and then was turned down because they had heard gossip, rumors, whatever, about her behavior as a whistleblower? Without me judging, I mean there was evidence, though, that she had employment opportunities and that they were being denied. There was evidence that she had applied to other positions and they were denied. And I can't put my finger on it, but the administrative judge considered that and considered the expert's description of her. . . Where did the administrative judge say she disbelieved that testimony? On Appendix 87. It's not disbelieving the test of the reputational harm. It's determining whether the future employment beyond the date of the contract is speculative, whether it's foreseeable. As a matter of law. Well, in this case, the facts of the case being a time-limited appointment and that coinciding with her entitlement or her rights to employment beyond the appointment. It's just so colored by, unfortunately, that choice of words of guarantees. I'm on that page 87 and the judge is saying there were no guarantees of future employment beyond that date, the date her contract was going to terminate. And that she agreed that the analysis, at least with regard to her working until age 80, was conjecture, not based on facts. But there were no guarantees. Again, it just runs up against the problem that it's setting a standard for the plaintiff to come in and say, I had a guarantee, not necessarily from the VA, but from anybody or everybody. I had to show I was guaranteed I'd be employed again. I mean, the specific facts of this case is this is a time appointment. And so the guarantee language goes back to the entitlement. What entitlement did she have from the government for employment going forward? And the court looked at her contract ending on June 7, 2019, and decided that, well, I'm going to take it a little further. I'm going to take it further to March 31, 2020, because these appointments usually coincide with the project. And the project ends at March 31, 2020. So the administrative judge decided that Dr. Perlick was entitled to some of the funds past her employment, some of the back pay. But beyond that, the administrative judge, looking at the evidence, determined that what would have happened is speculative. And that's where the no guarantee language comes in. That's her way of saying that it's speculative, it's conjecture, what happens after the not to exceed date or plus to the end of the project. In this case, under these facts. I think we're out of time. Thank you. Thank you, Your Honor. Mr. Walsh, we have two minutes. I think the court has precisely identified the flaws with the decision below. Neither Dr. Perlick nor anyone on a term limited contract, or for that matter, as the court noted, an at will employee can guarantee future employment. That doesn't mean that they would have been terminated or that they wouldn't have continued working somewhere. The record evidence is overwhelming that Dr. Perlick had every reasonable probability of continuing to work past March 31st, 2020. And as the court noted, there's nothing in the record submitted that demonstrates otherwise or that undermines Dr. Perlick's evidence. The reference to comparator evidence, I believe that's referring to the same comparator evidence that the ALJ rejected at the initial determination phase on liability. Because the supposed comparators were not similarly situated. But again, this would simply be a fact question for analysis and for some sort of explication by the ALJ. None of that happened. Instead, we have just a blanket requirement for a guarantee and then a failure to address any of the overwhelming evidence. Unless there are further questions, we'll rely on our papers. Okay, thank you. Thank both counsel. The case is submitted. That concludes our session for this morning. Thank you.